**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Nathan Christopher Braun,<br><br>    Petitioner,<br><br>v.<br><br>The Minnesota Department of Corrections, et al.,<br><br>    Respondents. | Case No. 21-cv-2297 (ECT/DTS)<br><br>**ORDER AND**<br>**REPORT AND RECOMMENDATION** |

This matter comes before the Court on Petitioner's Nathan Christopher Braun's (1) filing titled "§ 2254 Petition for Habeas Relief from Wrongful Imposition of Disciplinary Sanctions in Violation of Procedural Due Process That Constitute a Deprivation of Fundamental Liberty," Dkt. No. 1 (Petition) (capitalization amended); (2) Application to Proceed in District Court Without Prepaying Fees or Costs, Dkt. No. 3 (IFP Application); (3) filing titled "Title 28 U.S.C. § 2254 Petition for Habeas Corpus Relief from Wrongful Imposition of Disciplinary Sanctions in Violation of Procedural Due Process That Constitutes a Deprivation of Fundamental Liberty Guaranteed by the State and the Constitution," Dkt. No. 10 (Second Petition); and (4) Motion for Copies of Court Documents, Dkt. No. 12 (Copies Motion).

For the following reasons, the Court recommends dismissing the Petition without prejudice (due to Braun's failure to exhaust state-court remedies), denying the IFP Application as moot, and denying the Second Petition (construed as an attempt to amend the Petition). The Court also recommends issuing Braun a certificate of appealability (COA) concerning state-court exhaustion. As for the Copies Motion, the Court grants it in part and denies it in part.

## FINDINGS OF FACT

### A.   Braun's relevant criminal history

In August 2016, authorities issued a complaint charging Braun with one count of third-degree criminal sexual conduct, violating Minn. Stat. § 609.344, subd. 1(b) (2016). *See* Compl., *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Aug. 3, 2016).   During a November 2016 hearing, Braun pleaded not guilty.  *See* Ct. Minutes, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Nov. 23, 2016).  After a trial in July 2017, however, a jury convicted him.  *See* Verdict Form, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. July 31, 2017).  The trial court later sentenced Braun to 91 months imprisonment (with 274 days of credit for time served), following by 10 years of "[c]onditional release after confinement."  *See* Order and Warrant of Commitment, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Sept. 6, 2017).

In May 2021, Braun pleaded guilty to one count of fourth-degree assault of a correctional employee, violating Minn. Stat. § 609.2231, subd. 3(1) (2021), for which he was sentenced to an "agreed upon sentence of 8 months," to run consecutively to that in No. 05-CR-16-1323. *See* Register of Actions, *State v. Braun*, Case No. 13-CR-20-514 (Minn. Dist. Ct.) (Docket in No. 13-CR-20-514)..

### B.   Petition and show-cause briefing

The Court received the Petition on October 14, 2021.  *See* Compl. 1.  Invoking 28 U.S.C. § 2254, the Petition asserts that Minnesota authorities have violated Braun's constitutional rights in ways affecting his sentence length.  *See, e.g.*, *id.*

As the Court understands the Petition, Braun raises two arguments.  First, he claims—citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)—that MNDOC officials did not provide him with due process during two disciplinary hearings.  *See id.* at 2.  Braun asserts

2

that these hearings' outcomes "extend[ed] his incarceration by a total of 80 days." *Id.* at 2, 4.

Second, Braun contends that the Minnesota Department of Corrections (MNDOC) "refuses to acknowledge the fact that they have calculated [his] sentence incorrectly, and that the program that is being used to calculate inmates['] time incorrectly adds time to their sentences." *Id.* The idea here seems to be that for monthly sentences, authorities should confine a prisoner for only 30 days per month, rather than the actual number of days in a given month. *See id.* at 3.

As relief, Braun asks that the Court modify his sentence such that his release date is April 28, 2022. *See id.* at 5. He also asks for appointed counsel, as well as an evidentiary hearing and discovery. *See id.*

On November 12, 2021—after initial review of the Petition—the Court ordered Braun to "show cause why the Court should not dismiss this matter without prejudice for failure to exhaust state remedies." Nov. 2021 Order 1, Dkt. No. 4. The Court received Braun's response on December 1, 2021. *See* Resp. 1, Dkt. No. 5. The November 2021 Order allowed Respondents a reply, which they submitted on December 22, 2021. *See* Reply 1, Dkt. No. 7. On January 3, 2022, the Court received a filing from Braun styled as a response to the Reply. *See* Second Resp. 1, Dkt. No. 14.

**C.    Other relevant filings**

The Court notes certain other filings in this action. First, alongside the Petition, Braun filed the IFP Application, which asks the Court to let Braun proceed *in forma pauperis* in this action. *See* IFP Appl. 1.

Second, on December 27, 2021, the Court received the Second Petition. *See* Second Pet. 1. This filing also purports to be a § 2254 petition. *See id.* The Second

3

Petition's thrust is that Minnesota authorities failed to provide Braun due process in a third disciplinary hearing that occurred in November 2021. *See id.* at 3. After this hearing, Braun says, he was assessed "100 days of segregation and 30 days of Extended Incarceration." *Id.* at 5. The Second Petition asks the Court to "reverse[]" the imposed sanction. *Id.* at 6. Furthermore, the Second Petition asks the Court for a "joinder of petitions," *id.* at 1, 6—in other words, Braun wants the Court to address the Second Petition at the same time it considers the original.

Third, Braun filed the Copies Motion, which the Court also received on December 27, 2021. *See* Copies Mot. 1. This motion asks the Court to send Braun a copy of all documents in the dockets of six of Braun's actions in this district, including this one. *See id.*

## CONCLUSIONS OF LAW

### A.   The Petition

#### 1.   Exhaustion requirements and Braun's exhaustion arguments

Under 28 U.S.C. § 2241, as relevant here, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Section 2254 imposes certain limits on habeas applications "in behalf of a person in custody pursuant to the judgment of a State court." *Id.* § 2254(a). As discussed above, Braun is in MNDOC custody under at least two state-court judgments, so the § 2254 limits apply to the Petition. *See, e.g.*, *Williams v. Kelley*, 858 F.3d 464, 473 (8th Cir. 2017) ("Our court has held . . . that '§ 2254 is the only means by which "a person in custody pursuant to the judgment of a State court" may raise challenges to the validity of his conviction or sentence or to the execution of

4

his sentence.'" (quoting *Singleton v. Norris*, 319 F.3d 1018, 1023 (8th Cir. 2003) (en banc))).

These limits include a statutory exhaustion requirement: a habeas application subject to § 2254 generally "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Exceptions apply where "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." *Id.* § 2254(b)(1)(B)(i)–(ii). A petitioner bears the burden of establishing exhaustion or that an exhaustion exception applies. *See, e.g.*, *Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998); *Allan v. Piper*, No. 17-CV-5131 (PJS/DTS), 2020 WL 8371194, at *6 (D. Minn. Aug. 3, 2020) (citing *Carmichael*), *report and recommendation adopted*, 2021 WL 323957 (D. Minn. Feb. 1, 2021).

Braun's Response and Second Response assert that he has filed numerous state-court motions to correct or alter his sentence, but that these have "sat unanswered by the District Court." Resp. 1; *see also* Second Resp. 1 (making similar point). He asserts that this "effectively render[s] such process both unavailable to him, as well as depriving him of the ability to protect his rights through such a process." Resp. 1; *see also* Second Resp. 1–2 (making similar point).

In addition to these claims about Minnesota's state courts, Braun also says argues the unavailability and "ultimate ineffectiveness" of his state remedies are shown by his unsuccessful "attempt to have his sentence corrected by the State[']s 'Sentence Review Unit." Resp. 2. This refers not to a court action, but to Braun's administrative interactions with MNDOC's Sentence Administration Unit (SAU), attached to the Petition. *See* Dkt. No. 1-1.

5

The Court can quickly dispatch Braun's argument based on his SAU correspondence. These communications do not fulfill the § 2254 exhaustion requirement. Section 2254(b)(1)(A) specifically refers to an applicant exhausting "the remedies available in the *courts* of the State" (emphasis added), so noncourt communications like Braun's CAU correspondence cannot establish exhaustion.

### 2. Braun's relevant state-court conduct

This brings to the fore Braun's claim that he has filed numerous state-court motions to correct his sentence, but these have gone unanswered. With respect to Case No. 13-CR-20-514, the Court is aware that Braun filed a notice of appeal last November. *See* Not. of Appeal to Ct. of Appeals, *State v. Braun*, No. 13-CR-20-514 (Minn. Dist. Ct. Nov. 2, 2021). As far as the Court can tell, however, this case features no sentence-correction motions at all, much less any that have gone unanswered. *See* docket in No. 13-CR-20-514.

Braun's concerns thus must arise from Case No. 05-CR-16-1323. That matter's docket indicates that since his unsuccessful direct appeal, Braun has filed four petitions for postconviction review. (None raise the issues presented in the Petition.) Minnesota state courts resolved all four of these petitions promptly; they plainly have not been ignored or gone unanswered.[1] So what is Braun talking about?

---

[1] Braun filed the first postconviction-review petition on November 5, 2018, and the trial court resolved it in January 2019. *See* Postconviction Pet. Minn. Stat. 590.01 for D.C. File No. 05-CR-16-1323, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Nov. 5, 2018); Statement of Facts, Conclusions of Law, and Order, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Jan. 17, 2019). Braun filed the second on April 17, 2019; the trial court resolved it in May 2019. *See* St.'s Mem. of Law in Supp. of Answer to Second Pet. for Post-Conviction Relief, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. May 7, 2019); Mem. and Order, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. May 14, 2019). For the third postconviction-review petition, Braun filed it in August 2020, and the trial court denied it later that same month. *See* Order, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Aug. 26, 2020). Finally, Braun filed the fourth postconviction-review

6

From the Court's review of the docket in No. 05-CR-16-1323, the Court believes that Braun's points stem from a "Petition for Resentencing" he filed in September 2020. *See* Pet. for Resentencing, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Sept. 28, 2020). Unlike Braun's various petitions for postconviction review, this filing did not challenge Braun's conviction; it only attacked his sentence. *See id.* (Even here, however, the Petition for Resentencing focused on an issue not raised in the present Petition; the Petition for Resentencing argued that the trial court applied the wrong criminal-history score during Braun's sentencing.) It appears that, while the State of Minnesota filed a motion to dismiss the Petition for Resentencing, the trial court has never ruled on that motion or the Petition for Resentencing itself. *See* Pet'r's Resp. to Resp't's Mot. to Dismiss, *State v. Braun*, Case No. 05-CR-16-1323 (Minn. Dist. Ct. Oct. 13, 2020); Register of Actions, *State v. Braun*, Case No. 05-CR-16-1323 (Minn. Dist. Ct.).

Based on this discussion, the Court construes Braun as arguing that the Minnesota trial court's failure to address his Petition for Resentencing excuses his failure to exhaust state-court remedies as to the arguments in the Petition.

### 3. Absence of available state corrective process

The Court will first consider whether Braun has demonstrated an "absence of available State corrective process" under 28 U.S.C. § 2254(b)(1)(B)(i). It is unclear to the Court whether Braun actually claims that no state corrective process is available to him; his points align better with the idea that special circumstances here make that process ineffective. As for Respondents, they contend that there is indeed a state process

---

petition on August 10, 2021, and the trial court summarily denied it on August 18, 2021. *See* Mot. to Dismiss Pet. for Post-Conviction Relief, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Aug. 17, 2021); Not. of Judicial Determination, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Aug. 18, 2021).

7

available here—a state petition for habeas corpus under Minn. Stat. § 589.01—and that Braun has not tried to use it. *See* Reply 3–5.

The U.S. Supreme Court has clarified that § 2254(b)(1)(B)(i) applies when "there is no opportunity to obtain redress in state court." *See, e.g.*, *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)); *Henderson v. Lockhart*, 864 F.2d 1447, 1450 (8th Cir. 1989) (quoting *Duckworth*)). The Court agrees with Respondents that Braun has an opportunity to obtain state-court redress here through a petition under Minn. Stat. § 589.01. *See, e.g.*, Minn. Stat. § 589.01 ("A person imprisoned or otherwise restrained of liberty . . . may apply for a writ of habeas corpus to obtain relief from imprisonment or restraint."). The Court thus concludes that Braun has not shown that § 2254(b)(1)(B)(i) exception applies here.

### 4.     Circumstances rendering process ineffective

The Court next considers whether Braun has shown that "circumstances exist" making his available state process "ineffective to protect [his] rights." As discussed above, this argument rests on how the state court has handled Braun's Petition for Resentencing. To be clear: because the present Petition's arguments are not in the Petition for Resentencing, Braun's argument is not (and cannot be) that state-court delay has actually prevented exhaustion here. His argument, rather, is that the state court's handling of the Petition for Resentencing shows that filing a state habeas petition would be ineffective.

Several Eighth Circuit cases address when this § 2254(b)(1)(B)(ii) exception applies. In *Welch v. Lund*, the Eighth Circuit observed that § 2254(b)(1)(B) applies "when, for example, an inordinate and unjustifiable delay renders the state's process ineffective to protect the petitioner's rights." 616 F.3d 756, 760 (8th Cir. 2010). *Welch* does not

8

specify just when a delay becomes "inordinate and unjustifiable," but it is at least plausible that state court's delay in ruling on the Petition for Resentencing (currently about sixteen months) could qualify. But the Eighth Circuit has also stated—in a case concerning a nearly fifteen-month state-court delay—that "delay in a state court in and of itself is usually not sufficient to merit federal intervention." *Jones v. Solem*, 739 F.2d 329, 331 (8th Cir. 1984) (citing *Barry v. Sigler*, 373 F.2d 835, 838–39 n.4 (8th Cir. 1967) (per curiam)). To show that state-court delay makes state process ineffective, then, "[p]etitioners generally must also show the existence of some additional factor (for example, that 'state delay is a result of discrimination against the petitioner,' or that the State has been 'unnecessarily and intentionally dilatory[.]'" *Id.* (quoting *Mucie v. Mo. St. Dep't of Corrs.*, 543 F.2d 633, 636 (8th Cir. 1976)); *see also, e.g.*, *Krotzer v. Chapman*, No. 15-CV-2750 (DSD/JSM), 2015 WL 5158715, at *1 (D. Minn. Sept. 2, 2015) (citing *Jones*).

Without more, this *Jones* addendum to the *Welch* test would end the analysis. Braun points to no discrimination against him, nor does the record suggest that Minnesota's courts have intentionally dilatory.[2]

There is an Eighth Circuit case, however, that gives the Court some pause. In *Chitwood v. Dowd*, the Eighth Circuit affirmed in part and reversed in part a district court's order granting a state prisoner habeas relief. 889 F.2d 781, 782 (8th Cir. 1989). *Chitwood*'s procedural background defies easy summary. *See id.* at 782–83 (presenting full history). After being convicted of several crimes in Oklahoma and Missouri, and while incarcerated in Missouri, Chitwood repeatedly tried to determine whether sentences in

---

[2] Given the trial court's work on Braun's numerous postconviction-review petitions, the Court believes that the failure to handle the Petition for Resentencing was unintentional. The Court also considers it relevant that, as best as the Court can tell, Braun—no wallflower when it comes to telling courts about his concerns—has never reminded the relevant state court about his Petition for Resentencing.

9

two earlier convictions were running concurrently rather than consecutively. *See id.* at 782. This led to a lengthy set of actions in two different states, none successful. *See id.* at 782–83.

Chitwood eventually filed the relevant habeas petition in federal district court, and a magistrate judge (after appointing Chitwood counsel) issued a report and recommendation recommending that Chitwood receive habeas relief. *See id.* After the parties filed objections, the district court "expressed its desire that counsel for both parties pursue all possible methods of informally resolving Chitwood's petition." *Id.* at 783. This led to further activity in the Missouri and Oklahoma courts, but nothing that resolved Chitwood's issues. *See id.* The federal district court eventually entered an order granting Chitwood habeas relief, and the respondents appealed, arguing (among other things) that Chitwood had failed to exhaust state-court remedies and lacked any excuse for failing to do so. *See id.* at 784.

The Eighth Circuit determined that Chitwood's failure to exhaust state remedies should be excused, reasoning (in relevant part) as follows:

> The general rule is that federal courts will not grant habeas corpus relief to state prisoners if there are any state remedies remaining for the petitioner to seek. Failure to pursue available state remedies is not an absolute bar to appellate consideration of habeas corpus claims. Courts may grant habeas relief in "special circumstances," even though the petitioner did not exhaust state remedies. Determining whether such special circumstances exist is a factual appraisal for the trial court to decide . . . .
>
> We are satisfied that this case presents special circumstances sufficient to excuse complete exhaustion of state remedies. Chitwood has made a continual good faith effort to bring his petition before the proper forum and has faced roadblocks at every turn. Before seeking the aid of the courts, Chitwood made informal appeals to Missouri state officials for assistance and clarification of his sentence, appeals that usually did not receive a reply. When Missouri officials did

10

> respond, they failed to take any action to rectify Chitwood's predicament. Two habeas corpus petitions in state circuit courts did not win him any relief. As the prison time on his Barry County sentence had run almost to completion without any time credited against his Oklahoma sentence, Chitwood justifiably sought to preserve his rights in a federal forum.

*Id.* at 784–85 (citations omitted).

The Eighth Circuit acknowledged, however, that its decision seemed to be in tension with *Jones*, "in which we held that state court delay, without an additional factor such as discrimination against the petitioner or unnecessary or intentional delay by the state, is not usually sufficient to merit federal intervention." *Id.* at 785 (citing *Jones*, 739 F.2d at 331). To address this issue, the Eighth Circuit found it relevant that *Jones* concerned a challenge to the validity of a conviction. *See id.* This meant that in *Jones*, the petitioner's "challenge would not be rendered moot even if she was released on parole before the state's highest court ruled on the merits of her claim." *Id.* (citing *Jones*, 739 F.2d at 331). Specifically, "[h]er parole could be revoked and her conviction could have collateral consequences in the future that might be avoided by a judicial determination that her conviction was invalid." *Id.* (citing *Jones*, 739 F.2d at 331).

In contrast, noted the *Chitwood* panel, Chitwood "challenge[d] the actual time of his sentence, which is rapidly elapsing and potentially mooting his claim." *Id.* The panel thus suggested that Chitwood's "special circumstances arise . . . as potential loss of justiciability." *Id.* The *Chitwood* panel also stated that "[t]his potential loss combines with an 'additional factor' we required in [*Jones*]: Missouri state officials have disregarded, if not deliberately, at least negligently, the rights of a prisoner who sought the proper execution of his sentence." *Id.* The Eighth Circuit thus determined that Chitwood's failure to exhaust was excused.

11

Coming back to this matter, the question for this Court is how *Chitwood* affects the above analysis based on *Jones*. For like Chitwood, Braun here challenges not his conviction, but his sentence's length. He claims that if his arguments carry the day, he merits release in April 2022—in other words, soon. *Chitwood* also seems to tweak the *Jones* delay standard: *Jones* requires a showing of unnecessary and intentional delay, but *Chitwood* suggests that (at least in some cases) negligent delay can excuse state-court exhaustion. On this reading, Braun would not need to show intentional delay by the state, so the state court's negligent failure to resolve the Petition for Resentencing might be enough to excuse Braun's failure to exhaust.

In this case's circumstances, however, the Court concludes that Braun's case is distinguishable from *Chitwood*. When it comes to the petitioner's efforts to exhaust the relevant issues, Braun's efforts come nowhere close to Chitwood's; indeed, it appears that Braun has never even tried to exhaust the present Petition's arguments in state court. Unlike Chitwell's situation, in which his repeated attempts to press key issues were repeatedly thwarted, Braun's situation is one where responsibility for failing to exhaust the relevant arguments lies flatly with him. Furthermore, even if *Chitwell* lets negligent conduct excuse exhaustion, the repeated, long-term negligence (or more) present in *Chitwell* cannot be found here. Braun submitted at least four petitions for postconviction review to the state court; all were handled expeditiously. And Braun's suggestion that the Minnesota courts have "thwarted [him] at every turn," Resp. 2, is further belied by the fact that Braun has never reminded the state court about his pending Petition for Resentencing.

The Court thus concludes that Braun does not fit into whatever carveout *Chitwood* creates for the *Jones* rule. This in turn means that, given Braun's failure to meet the

12

*Jones* requirements, Braun has not shown that "circumstances exist that render [available State corrective process] ineffective to protect [his] rights."

### 5.     Summary (and IFP Application)

In summary, then, the Court concludes that Braun has failed to exhaust his state-court remedies for the arguments in the Petition, and also failed to justify excusing that failure. The Court therefore recommends dismissing the Petition without prejudice based on Braun's failure to exhaust state-court remedies. Given this recommendation, the Court also recommends denying the IFP Application as moot.

### B.     Second Petition

The Court next considers the Second Petition. Putting aside its substance, the Court construes the Second Petition as essentially a motion to amend the Petition—i.e., Braun wants this Court to address not just the original Petition's claims, but also those claims in the Second Petition.

Under 28 U.S.C. § 2242, an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." This points the Court to the Federal Rules of Civil Procedure (FRCP). Under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, as relevant here, "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it[.]"[3] Braun missed this deadline, so he cannot amend the Petition as a matter of course. Under Rule 15(a)(2), "[i]n all other cases, a party may amend its pleading only with the

---

[3] Rule 15(a)(1)(B) permits amendment as a matter of course in certain additional situations when "the pleading is one to which a responsive pleading is required." But the filing of a § 2254 petition does not automatically demand a responsive pleading. *See* Rules Governing § 2254 Cases in the U.S. District Courts at Rule 4. Rule 15(a)(1)(B) thus does not apply here.

13

opposing party's written consent or the court's leave," though "[t]he court should freely give leave when justice so requires."

Here, justice does not require giving Braun leave to amend. Where a proposed amendment is futile, justice does not require that a court allow it. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing "futility of amendment" as reason justifying request to amend); *Davis v. Morris-Walker, LTD*, 922 F.3d 868, 872 (8th Cir. 2019) (citing *Foman*). Nothing here indicates that Braun has exhausted his state-court remedies as to the substantive claims in the Second Petition. Braun again suggests that this Court should excuse his failure to exhaust, but the Court concludes that its exhaustion analysis above fully applies to the Second Petition's claims as well. Given this unexcused failure to exhaust state-court remedies, amending the Petition to include the Second Petition's claims would be futile.

The Court therefore concludes that the Second Petition, construed as a motion to amend, should be denied. As the Court's reasoning here hinges on conclusions being recommended as to the Petition, the Court will merely recommend denial of the Second Petition (instead of ordering the denial outright).

### C.   Copies Motion

The Court turns next to the Copies Motion. As a threshold point, it appears that Braun filed the Copies Motion in each of his various pending cases—i.e., he has asked the court in *each* of his pending cases to provide him copies of materials in *all* of those cases. The Court denies the Motion to the extent it seeks copies of materials in Braun's actions other than this one.

As for materials in this case, Braun states that IFP status "provides [him] with free filing as well as free copies in this Court." Copies Mot. 1. Braun is wrong about the

14

copies: even if the Court were to grant Braun's IFP Application here, IFP status would not entitle him to free copies of filings. *See, e.g.*, *Duwenhoegger v. Miles*, No. 17-CV-1432 (PJS/TNL), 2017 WL 2799155, at *1 (D. Minn. June 28, 2017) (citing cases); *United States v. Mentzos*, No. 04-CR-0173 (ADM/RLE), 2008 WL 11469261, at *2 (D. Minn. Apr. 21, 2008) (same). But it is within the Court's discretion to provide such copies. Given the small number of materials filed thus far, the Court grants the Copies Motion to the extent it seeks a copy of this action's filings. The Court orders the Clerk of Court to send Braun a copy of this action's earlier filings (Dkt. Nos. 1–14).

### D.     Certificate of appealability

Finally, under 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a [COA], an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." Under § 2253(c)(2), "[a] [COA] may issue under [§ 2253(c)(1)] only if the applicant has made a substantial showing of the denial of a constitutional right." And "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Given the *Jones/Chitwood* tension discussed above, the Court concludes that reasonable jurists could disagree about whether to dismiss Braun's Petition because of his failure to exhaust state-court remedies. The Court thus recommends granting Braun a COA as to that issue.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. Plaintiff Nathan Christopher Braun's "Motion for Copies of Court Documents" (Dkt. No. 12) is **GRANTED** to the extent it seeks copies of this action's filings, and otherwise **DENIED**.

2. The Clerk of Court shall send Braun a copy of the materials filed at Dkt. Nos. 1–14 in this action's docket.

## RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS THAT**:

1. Plaintiff Nathan Christopher Braun's "§ 2254 Petition For Habeas Relief From Wrongful Imposition Of Disciplinary Sanctions In Violation of Procedural Due Process That Constitute A Deprivation of Fundamental Liberty," Dkt. No. 1, be **DISMISSED** without prejudice based on failure to exhaust state-court remedies.

2. Braun's Application to Proceed in District Court Without Prepaying Fees or Costs, Dkt. No. 3, be **DENIED** as moot.

3. Braun's "§ 2254 Petition for Habeas Corpus Relief from Wrongful Imposition of Disciplinary Sanctions In Violation of Procedural Due Process That Constitutes a Deprivation of Fundamental Liberty Guaranteed by the State and the Constitution" (Dkt. No. 10), construed as a motion to amend the Petition, be **DENIED**.

4. Braun be issued a certificate of appealability on the issue of whether the Court should excuse his failure to exhaust state-court remedies as to the Petition.

Dated: January 31, 2022      ___s/David T. Schultz_____
                             DAVID T. SCHULTZ
                             U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).